**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **ATLANTIC CASUALTY INSURANCE COMPANY,** § § § | |
| **Plaintiff,** § § § | |
| **v.** § § | **CIVIL ACTION NO. 3:19-cv-01618** |
| **TAYLORMADE HEAT & AIR, LLC, CHRISTINE GANCARZ, HARRY HARRISON, STEVE BOTTUM, CLINT RACHAL, GENA RACHAL, LARRY WALTON, AMAR ALI, MICHAEL BUCHANAN, DEBBIE CARSON, JANE EDWARDS, BRIAN TOLIVER, PHILLIP ST. GEORGE, SALLY YAMINI, RICHIE BOYD, RHONDA JONES, M CENTRAL RESIDENCES CONDOMINIUM ASSOCIATION, INC., M CENTRAL MASTER CONDOMINIUM ASSOCIATION, INC, and GREAT AMERICAN INSURANCE COMPANY,** § § § § § § § § § § § § § § § § § | |
| **Defendants.** § § | |

## COMPLAINT SEEKING DECLARATORY JUDGMENT

TO THE HONORABLE COURT:

Plaintiff, Atlantic Casualty Insurance Company, files this Complaint for declaratory judgment and respectfully shows the following to the Court:

### I.
### PARTIES

1.    Atlantic Casualty Insurance Company ("Atlantic Casualty") is a North Carolina corporation with its principal place of business in Goldsboro, North Carolina.

2.      Taylormade Heat & Air, LLC ("Taylormade") is a Texas limited liability company whose sole member is Randy Lance Taylor, a Texas citizen residing at 3512 Eisenhower Avenue, Melissa, Texas 75454. Taylormade's registered agent for service of process is United States Corporation Agents, Inc., 9900 Spectrum Drive, Austin, Texas 78717.

3.      On information and belief, Christine Gancarz is a Texas citizen residing at 5656 N Central Expressway, Unit 802, Dallas, Texas 75206.

4.      On information and belief, Harry Harrison is a Texas citizen residing at 5656 N Central Expressway, Unit 801, Dallas, Texas 75206.

5.      On information and belief, Clint and Gena Rachal are Texas citizens residing at 5656 N Central Expressway, Unit 702, Dallas, Texas 75206.

6.      On information and belief, Steve Bottum is a Texas citizen residing at 5656 N Central Expressway, Unit 701, Dallas, Texas 75206.

7.      On information and belief, Debbie Carson is a Texas citizen residing at 5656 N Central Expressway, Unit 602, Dallas, Texas 75206.

8.      On information and belief, Larry Walton is a Texas citizen residing at 5656 N Central Expressway, Unit 601, Dallas, Texas 75206.

9.      On information and belief, Sally Yamini is a Texas citizen residing at 5656 N Central Expressway, Unit 502, Dallas, Texas 75206.

10.      On information and belief, Jane Edwards is a Texas citizen residing at 5656 N Central Expressway, Unit 501, Dallas, Texas 75206.

11.      On information and belief, Michael Buchanan is a Texas citizen residing at 5656 N Central Expressway, Unit 402, Dallas, Texas 75206.

12.     On information and belief, Amar Ali is a Texas citizen residing at 5656 N Central Expressway, Unit 401, Dallas, Texas 75206.

13.     On information and belief, Richie Boyd is a Texas citizen residing at 5656 N Central Expressway, Unit 302, Dallas, Texas 75206.

14.     On information and belief, Brian Toliver is a Texas citizen residing at 5656 N Central Expressway, Unit 301, Dallas, Texas 75206.

15.     On information and belief, Phillip St. George is a Texas citizen residing at 5656 N Central Expressway, Unit 202, Dallas, Texas 75206.

16.     On information and belief, Rhonda Jones is a Texas citizen residing at 5656 N Central Expressway, Unit 201, Dallas, Texas 75206.

17.     Christine Gancarz, Harry Harrison, Clint and Gena Rachal, Steve Bottum, Debbie Carson, Larry Walton, Sally Yamini, Jane Edwards, Michael Buchanan, Amar Ali, Richie Boyd, Brian Toliver, Phillip St. George, and Rhonda Jones are collectively referred to as "the Residence Owners." The Residence Owners are named as defendants in this lawsuit because they are potential judgment creditors of Taylormade.

18.     M Central Residences Condominium Association, Inc. ("M Central Residences") is a Texas nonprofit corporation with its principal place of business in Dallas, Texas. M Central Residences's registered agent for service of process is Somerset Association Management, Inc., 5401 N Central Expressway, Suite 220, Dallas, Texas 75205. On information and belief, M Central Residences is the owner or operator of the condominium at 5656 N Central Expressway, Dallas, Texas 75206 and a potential judgment creditor of Taylormade.

19.     M Central Master Condominium Association, Inc. ("M Central Master") is a Texas nonprofit corporation with its principal place of business in Dallas, Texas. M Central Master's

registered agent for service of process is Somerset Association Management, Inc., 5401 N Central Expressway, Suite 220, Dallas, Texas 75205. On information and belief, M Central Master is the owner or operator of the condominium at 5656 N Central Expressway, Dallas, Texas 75206 and a potential judgment creditor of Taylormade.

20.     Great American Insurance Company ("Great American") is an Ohio corporation with its principal place of business in Cincinnati, Ohio. Great American's registered agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. On information and belief, Great American is an insurer of M Central Residences or M Central Master with potential subrogation claims against Taylormade or Atlantic Casualty.

## II.
## JURISDICTION AND VENUE

21.     None of the defendants in this lawsuit are North Carolina citizens like Atlantic Casualty. Atlantic Casualty's citizenship is completely diverse from Taylormade, the Residence Owners, M Central Residences, M Central Master, and Great American and the amount in controversy exceeds $75,000, exclusive of interest and costs. Therefore, the Court has subject-matter jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1).

22.     Taylormade's sole member, Randy Lance Taylor, is a Texas citizen. Likewise, the Residence Owners, M Central Residences, and M Central Master are all Texas citizens. Accordingly, the Court has personal jurisdiction over Taylormade, the Residence Owners, M Central Residences, and M Central Master.

23.     Great American purposefully availed itself of the benefits of Texas law by placing insurance with a Texas nonprofit corporation, thereby establishing minimum contacts with Texas such that the exercise of jurisdiction over Great American will not offend traditional notions of fair place and substantial justice. This lawsuit further arises out of those minimum contacts that

Great American has with Texas. Accordingly, the Court has personal jurisdiction over Great American.

24.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this lawsuit occurred in this judicial district.

### III.
### FACTS

25.     Atlantic Casualty brings this claim for declaratory judgment under both Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201-2202.

### A.  Water Heater Installation

26.     On January 23, 2019, two employees or contractors for Taylormade—Jeffrey Thomas Miller and Travis Scott—arrived at 5656 N Central Expressway, Unit 802, Dallas, Texas 75206 ("Unit 802") to remove and replace a water heater.

27.     In removing the old water heater from Unit 802's water closet, Messrs. Miller and Scott cut copper lines connected to the water heater.

28.     After setting a new water heater in the water closet, Messrs. Miller and Scott used a soldering device to reconnect the copper lines to the water heater.

29.     The heat or smoke emitted from the soldering device caused Unit 802's overhead sprinkler system to activate and spray water throughout the unit for approximately 7-10 minutes before Messrs. Miller and Scott shut off the building's water.

30.     Investigative reports indicate that the water released from Unit 802's sprinkler system infiltrated other units beside and beneath Unit 802, purportedly causing damage to flooring, baseboards, ceilings, walls, drywall, and cabinetry within the Residence Owners' units.

### B. Insurance

31.     Before the incident recounted above, Atlantic Casualty issued commercial general liability policy M053000694-1 to "Taylormade Heat & Air, LLC" for the annual term of September 15, 2018, to September 15, 2019 ("the Atlantic Casualty Policy").[1]

32.     The Atlantic Casualty Policy describes Taylormade's business as "HVAC Contractor" and reflects that Taylormade is classed for the following operations:

> Code 95647 – Heating or Combined Heating and Air Conditioning Systems or Equipment – dealers or distributors and installation, servicing or repair – no liquified petroleum gas (LPG) equipment sales or work.

### IV.
### DECLARATORY JUDGMENT

33.     Paragraphs 1-32 are incorporated herein by reference.

34.     Atlantic Casualty seeks a declaration that Taylormade's water heater installation in Unit 802 is not an operation for which Taylormade was specifically classed under the Atlantic Casualty Policy and that Atlantic Casualty has neither a duty to defend nor indemnify Taylormade for any damages arising out Taylormade's water heater installation in Unit 802.

35.     The Atlantic Casualty Policy grants coverage for certain "property damage" caused by an "occurrence" during the effective policy period:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**[2]

   a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of ... "property damage" to which this

---

1   *See* Exhibit A.

2   As amended by endorsement form AGL-077 10-16 ("Insuring Agreement Amendment – Use of Extrinsic Evidence – Right to Defend").

insurance applies. We will have the right and the duty to defend the insured against any "suit" seeking covered damages. We will have the rights, but not the duty, to defend any insured against any "suit" for which we dispute coverage. We will have no duty to defend or indemnify any insured against any "suit" seeking damages for … "property damage" where there is no coverage under the policy. We will have the right, but not the duty, to defend those qualifying as an additional insured by way of an additional insured endorsement.

We may look to extrinsic evidence outside of the allegations and/or facts pleaded by any claimant to determine whether we owe a duty to defend or indemnify against a lawsuit seeking … "property damage," provided that extrinsic evidence does not contradict a claimant's pleaded allegation. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in SECTION III – LIMITS OF INSURANCE; and

(2) Our right and duty to defend a claim to which this insurance applies ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under COVERAGES A or B or medical expenses under COVERAGE C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A and B.

b. This insurance applies to … "property damage" only if:

(1) The … "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The … "property damage" occurs during the policy period …

36.     Pursuant to the amended insuring agreement, Atlantic Casualty may consult certain extrinsic evidence to determine its defense and indemnity obligations. And when there is no coverage under the Atlantic Casualty Policy, Atlantic Casualty has no duty to defend or indemnify Taylormade.

**A.  Classification Limitation**

37.     Paragraphs 1-36 are incorporated herein by reference.

38.     The Atlantic Casualty Policy's coverage is limited by the Classification Limitation endorsement, which excludes coverage for any "property damage" that does not arise out of Taylormade's classifications in the declarations:

## CLASSIFICATION LIMITATION

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to and no duty to defend is provided for … "property damage" … unless the insured can demonstrate the … "property damage" … arise[s] out of the classification(s) shown on the Commercial General Liability Coverage Declarations, its endorsements or supplements. The parties agree the definition(s) used for the classification(s) in the policy are those defined and maintained by the Insurance Services Office (ISO).

*AGL-015 05 14*

39.     As stated before, Taylormade is an "HVAC Contractor" solely classed for "Code 95647 – Heating or Combined Heating and Air Conditioning Systems or Equipment – dealers or distributors and installation, servicing or repair – no liquified petroleum gas (LPG) equipment sales or work." The Insurance Services Office's description for Code 95647 contemplates operations related to HVAC installation, servicing, or repair and products such as furnaces, heat exchangers, condensing units, ductwork, evaporators, and blowers/fans.

40.     The installation of water heaters does not fit the description of Code 95647. Instead, water heater installation is a plumbing operation that falls under Code 98482 – Plumbing – Commercial and Industrial or Code 98483 – Plumbing – Residential or Domestic.

41.     Accordingly, any "property damage" that resulted from Taylormade's water heater installation in Unit 802 did not arise out of Taylormade's sole classification—Code 95647—and, therefore, there is no coverage under the Atlantic Casualty Policy.

**B.  Coverage-Form Exclusions**

42.      Paragraphs 1-41 are incorporated herein by reference.

43.      In addition to the Classification Limitation, the circumstances surrounding the water heater installation and subsequent water damage trigger the following exclusions:

**2.  Exclusions**

This insurance does not apply to:

…

**j.  Damage to Property**

"Property damage" to:

…

(5)  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

…

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k.  Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.  Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.  Damage to Impair Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after is has been put to its intended use.

**C. Other Endorsements**

44.     Paragraphs 1-43 are incorporated herein by reference.

45.     In addition to the applicable coverage-form exclusions, there is no coverage for any damage arising out of Taylormade's water heater installation in Unit 802 if Messrs. Miller and Smith were contractors, not employees:

### EXCLUSION – INDEPENDENT CONTRACTORS OR SUBCONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to any claims, loss, costs or expenses arising out of or related to the action(s) or inaction(s) of independent contractors or subcontractors by or on behalf of any insured; or for the negligent hiring, training, supervision, direction, inspection, investigation, management or retention of independent contractors or subcontractors on behalf of any insured.

*AGL-005 10-10*

46.     There is no coverage for any claim, loss, cost, or expense for "property damage" related to breach of contract:

### EXCLUSION – BREACH OF CONTRACT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to any claim, loss, costs or expense and no duty to defend is provided by us for … "property damage" … for claims, "suits," allegations, accusations, charges, whether written or oral, express

or implied for breach of contract, breach of an implied in law or implied in fact contract. This exclusion also applies to any additional insured under this policy.

AGL-169 10 16

47.    The Atlantic Casualty Policy further amends the definition of "property damage"

to clarify that "property damage" does not include breach of contract:

### AMENDED DEFINITION – PROPERTY DAMAGE

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph 17. of SECTION V – DEFINITIONS is replaced by the following:

17.  "Property damage" means:

   a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

However, "property damage" does not include breach of contract, breach of any express or implied warranty, deceptive trade practices or violation of any consumer protection laws.

"Property damage" does not include any cost or expense to repair, replace or complete any work to any property that you, or any insured, are otherwise obligated to repair, replace or complete pursuant to the terms of any contract.

…

AGL-106 03-13

48.    There is no coverage for any claim, loss, cost, expense, or damage arising out of

the existence of mold or fungus:

### EXCLUSION – MOLD, BACTERIA, VIRUS AND ORGANIC PATHOGEN LIABILITY

This insurance does not apply to any claim, loss, costs or expense arising from any actual or alleged:

1. "bodily injury", "property damage", "personal and advertising injury";

2. damages for devaluation of property or for the taking, use or acquisition or interference with the rights of others in property or air space; or

3. fines, penalties and attorney fees, arising out of any governmental direction or request, or any private party or citizen action, that an insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize "organic pathogens"; or

4. litigation or administration procedure in which an insured may be involved as a party;

arising directly, indirectly, or in concurrence or in any sequence out of actual, alleged or threatened existence, exposure to, discharge, dispersal, deposit, release or escape of "organic pathogens", whether or not such actual, alleged or threatened existence, discharge, dispersal, release or escape is sudden, accidental or gradual in nature.

In addition, this insurance does not apply to any alleged "bodily injury", "property damage", "personal and advertising injury", loss, cost or expense including but not limited to fines, penalties and attorney fees, arising out of or related to any form of "organic pathogens", whether or not such actual, alleged or threatened existence, exposure to, discharge, dispersal, deposit, release, or escape is negligently or intentionally caused by any person or entity and whether or not the liability of any insured is alleged to be direct or vicarious. This exclusion also applies whether or not such injury, damage, devaluation, cost or expense is expected or intended from the standpoint of any insured.

"Organic pathogen" means any organic irritant or contaminant, including but not limited to mold, fungus, bacteria or virus, including but not limited to their byproducts such as mycotoxin, mildew, biogenic aerosol, or scent.

AGL-054 03-13

## V.
## CONCLUSION AND PRAYER

49. Paragraphs 1-48 are incorporated herein by reference.

50. Pursuant to the Atlantic Casualty Policy, Taylormade was specifically classed for "Code 95647 – Heating or Combined Heating and Air Conditioning Systems or Equipment – dealers or distributors and installation, servicing or repair – no liquified petroleum gas (LPG) equipment sales or work," or, in simpler terms, HVAC operations. Taylormade was not classed

for the installation of water heaters—a plumbing operation that falls under a different classification code. Therefore, there is no coverage pursuant to the Classification Limitation. Additionally, the facts underlying Taylormade's water heater installation further trigger coverage-form exclusions and endorsements that preclude coverage for any damage arising out of the installation.

51.      Because one or more Atlantic Casualty Policy exclusions or endorsements apply to exclude coverage for any damage arising out of Taylormade's water heater installation in Unit 802, Atlantic Casualty asks the Court for:

    a.   A declaration that any damage arising out of Taylormade's water heater installation in Unit 802 is not covered under the Atlantic Casualty Policy and that Atlantic Casualty does not have:

        i.   a duty to defend or indemnify Taylormade for any such damage; and

        ii.   a duty to indemnity any Residence Owner, M Central Residences, M Central Master, Great American, or any subrogating insurer of any Condominium Owner for any such damage;

    b.   Court costs; and

    c.   All other relief that the Court deems appropriate.

Respectfully submitted,

SAVRICK, SCHUMANN, JOHNSON,
MCGARR, KAMINSKI & SHIRLEY, LLP


Camille Johnson
State Bar No. 10686600
William C. Vanderbilt
State Bar No. 24110472
6440 N Central Expressway, Suite 107
Dallas, Texas 75206
Tel: (214) 368-1515
Fax: (214) 292-9647
camille@ssjmlaw.com
will@ssjmlaw.com

**Counsel for Atlantic Casualty
Insurance Company**